IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

03 JUN 12 AM 9: 11

U.S. DISTRICT COURT
N.D. OF ALABAMA

MICHAEL L. SPROUL, )
 )
   Petitioner, )
 )
v. ) CIVIL ACTION NO. 02-BE-3213-J
 )
WARDEN GWENDOLYN MOSELY and )
THE ATTORNEY GENERAL OF )
THE STATE OF ALABAMA, )
 )
   Respondents. )

ENTERED
JUN 1 2 2003

## MEMORANDUM OPINION

Before the court is the petitioner's application for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, challenging his guilty pleas to charges of first degree kidnaping and first degree burglary. The application was referred to a magistrate judge of this court who entered a report and recommendation on April 15, 2003, finding that the petition is time-barred by the applicable statute of limitations under the Antiterrorism and Effective Death Penalty Act (hereinafter "AEDPA"). *See* 28 U.S.C. § 2244(d). The petitioner subsequently filed a motion to amend his application to advance a claim that he is actually innocent of the charges. He has also filed an objection to the report and recommendation, asserting that the application should be deemed to be timely because certain "mitigating" circumstances resulted in the tardy filing of the same.

### AEDPA AND ACTUAL INNOCENCE CLAIMS

AEDPA does not include an enumerated exception to the one-year statute of limitations for claims of actual innocence. The courts that have been presented with this issue have resolved the matters before them without addressing the issue of whether AEDPA implicitly includes such

17

an exception. *See, e. g., Wyzykowski v. Department of Corrections*, 226 F.3d 1213, 1218-19 (11th Cir. 2000); *see also Barbour v. Haley*, 145 F. Supp. 2d 1280, 1288 (M.D. Ala. 2001) ("Like the majority of courts that have addressed the issue, the *Wyzykowski* court avoided determining the constitutionality of § 2244(d) and remanded the case to the district court to address the factual question whether the petitioner could make a showing of actual innocence."); *Cromwell v. Keane*, 33 F. Supp. 2d 282, 287 (S.D.N.Y. 1999) (additional cases cited therein); *Alexander v. Keane*, 991 F. Supp. 329, 338 (S.D.N.Y. 1998). In resolving those cases on the issue of whether the particular petitioner had shown "actual innocence," the courts adhered to the "longstanding maxim of judicial restraint that it is 'our duty to avoid deciding constitutional questions presented unless essential to proper disposition of the case.'" *Cromwell*, 33 F. Supp. 2d at 287, citing *Alexander,* 991 F. Supp. at 338. *Accord Wyzykowski*, 226 F.3d at 1218-19.

Accordingly, this court must examine whether the petitioner has made a showing of "actual innocence." *Wyzykowski*, 226 F.3d at 1218-19. In *Bousley v. United States*, 523 U.S. 614, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998), the Supreme Court discussed the "actual innocence" standard when a post-conviction challenge to a guilty plea is procedurally defaulted by failing to raise it on direct appeal. The Court, in discussing the defendant's challenge to the guilty plea, noted the following:

> Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either "cause" and actual "prejudice," *Murray v. Carrier*, 477 U.S. 478, 485, 106 S. Ct. 2639, 2643-2644, 91 L. Ed. 2d 397 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 2506-2507, 53 L. Ed. 2d 594 (1977), or that he is "actually innocent," *Murray*, 477 U.S., at 496, 106 S. Ct., at 2649-2650; *Smith v. Murray*, 477 U.S. 527, 537, 106 S. Ct. 2661, 2667-2668, 91 L. Ed. 2d 434 (1986).

*Bousley*, 523 U.S. at 622. The Supreme Court also stated that to establish "actual innocence" a petitioner must demonstrate "that, "'in light of all the evidence,'" 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley*, 523 U.S. at 623, quoting *Schlup v. Delo*, 513 U.S. 298, 327-28, 115 S. Ct. 851, 867-68, 130 L. Ed. 2d 808 (1995) (quoting Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 160 (1970)). The Court further noted that "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. "In order to pass through the actual innocence gateway, a petitioner's case must be 'truly extraordinary.'" *Alexander*, 991 F. Supp. at 339, citing *Schlup*, 513 U.S. at 327.

      The petitioner premises his claim of actual innocence on the affidavits of his father, W. F. Sproul, and his ex-wife, Paula Marie Jean Sproul. (Doc. 14 & 15). The court finds that the petitioner's claim of actual innocence is not the type of "factual innocence" referred to in *Bousley*. The court has carefully considered the submissions from the petitioner and finds that he has not made "the extraordinary showing" of actual innocence necessary to warrant relief. *Alexander*, 991 F. Supp. at 339, citing *Schlup*, 513 U.S. at 327, 115 S. Ct. at 867. His claim is more akin to a challenge to the sufficiency of the evidence.

      The petitioner's forensic evaluation report prepared by the Taylor Hardin Secure Medical Facility in Tuscaloosa, Alabama, provides a summary of the alleged offense, which was based, at least in part, on the Cordova Police Department arrest records, the Alabama Incident/Offense Report, Walker County Sheriff's Department records, witness statements, and an interview of the defendant. (R. at 47-48).[1] It provides:

---

[1] The record references herein are located at document 7, exhibit A.

3

> The aforementioned case number refers to a series of events which are alleged to have occurred on June 28, 1998. Records allege that, on that date, the defendant went to the home of his in-laws at approximately 10:30 p.m. and demanded to see his son. It is noted that his father-in-law refused to let him in to see his son, whereupon the defendant allegedly kicked in the door, then struck his wife. Reportedly, the defendant then took the child and drove off down the road. He later returned, reportedly disembarking from the vehicle with the child and a loaded rifle. Reports indicate that he made numerous threats to kill people on the scene; reports further state that the defendant's father was later able to wrest the child and rifle away from the defendant. The defendant was subdued by police officers and arrested on numerous charges.

(*Id.* at 47). The petitioner's father asserts that "[t]o the best of [his] knowledge" the petitioner "did in fact voluntarily give up [his son,] Benjamin Michael Sproul, in a perfectly safe manner by handing the child to [him]." (Doc. 15 at 1). He then surrendered the weapon. According to the petitioner's father, he (the petitioner) "did not use his child as a shield from police, or any one." (*Id.*). He also speculates that "[t]he petitioner['s] only intent was to gain custody of his child." (*Id.*). Regarding the burglary charge, the petitioner's father states that the petitioner knocked at the door of the residence and the victim, Roverny Griffin,[2] opened the door and allowed him inside. He concludes by stating that "it is evident by the testimony of Jamie Jean and other alleged victims that the petitioner Michael Sproul did in fact leave from inside the home of Roverny Griffi[th] after she made it known that he wasn't welcome." (*Id.*).

The petitioner's ex-wife, Paula Sproul, states in her affidavit that as a result of a domestic disturbance, the petitioner "pushed" her father over a couch and she struck the petitioner over the head. (Doc. 14 at 1). The petitioner was led out of the home by her father at gun point. The petitioner then grabbed his son from her mother and left the residence. (*Id.*). He returned a short

---

[2] The petitioner's father refers to the home as belonging to Reverny Griffin; however, the indictment lists the residence as that of Roverine Griffith. (R. at 16). The petitioner's ex-wife identifies her grandmother by the name Roverny Griffith. (Doc. 14). It is apparent that the various references are to the same person. For consistency the court will use the name Griffith herein.

time later with his son and a rifle. According to Paula Sproul, he knocked on Roverny Griffith's residence using the butt of the rifle. He was allowed inside. When Griffith told him to leave because she did not want him there, he left. (*Id.* at 2). Paula Sproul then asserts that the petitioner did not use their son "as a shield or hostage from [the] police or anyone, nor was it Mr. Sproul['s] intent to do any such thing." (*Id.*). She also asserts that he "did not enter or remain unlawfully in . . . [the] dwelling [nor] did Mr. Sproul . . . imprison Roverine Griffith or myself." (*Id.*).

The belated evidence submitted by the petitioner is insufficient to support a finding of actual innocence under the foregoing standard. Much of the evidence is speculative, conclusory, or improper mental conclusions on the part of the affiants. Additionally, there is nothing new about this evidence. It was known to him at the time of his plea of guilty in state court. To allow this evidence to undergird a conclusion that the petitioner has made a showing of actual innocence sufficient to obviate the applicable statute of limitations would undermine the need for finality of criminal convictions.

## COMMENCEMENT OF THE TIME FOR FILING

The petitioner also asserts that his claims should be reviewed on the merits because "prison authorities did not distribute [to] him the notice of final process of the Rule 32 [petition] until some two (2) weeks from the date it became final, April 19, 2002" and because "from April 19, 2002 to November 15, 2002, the prison library suffered major water damage and was closed for days at [a] time, leaving him no means to prepare his petition as law books and legal aid was unavailable." (Doc. 16 at 2 & 3). In support of this contention, the petitioner cites to § 2244(d)(1)(B), which provides that the time for filing a federal habeas petition shall run from

"the date on which the impediment to filing an application created by state action in violation of the constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). Neither the delay in delivering the mail in this matter nor the damage to and the restricted use of the law library constitutes illegal state action preventing the petitioner from filing his petition. The petitioner's objection makes it clear that the library was only "closed for days at a time," not during the entire period. (Doc. 16 at 3). Additionally, the petitioner was not required to file the forty-one page memorandum in support of his application for relief that he did file. That he chose to expend additional time to prepare such a voluminous submission before filing his application is a consequence he must accept.[3]

To the extent that the petitioner's objection may be read to include a claim that he is entitled to "equitable tolling" of the statute of limitations, the court finds otherwise. The Eleventh Circuit Court of Appeals has held that "equitable tolling" may be applied to avoid "the AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition." *Helton v. Secretary for Dept. of Corrections*, 259 F.3d 1310, 1312-13 (11th Cir. 2001), *cert. denied*, 535 U.S. 1080, 122 S. Ct. 1965, 152 L. Ed. 2d 1025 (2002), citing *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999). Accordingly, the issue is whether the circumstances alleged by the petitioner were so "extraordinary" as to excuse his untimely filing. The petitioner could have timely submitted his application under the circumstances before this court. That he chose to wait until the last minute

---

[3] The court is unimpressed with the petitioner's argument that any delay in filing was due to the fact the library "was closed for days at [a] time, leaving him no means to prepare his petition as law books and legal aid was unavailable," because in the application and memorandum he ultimately submitted to this court, he certifies that it was placed in the United States Mail on November 15, 2002. (Doc. 1, Memorandum at 41). The court also notes that the petition and memorandum were postmarked in Montgomery, where the prison is located, on December 30, 2002. It was received by the Clerk of this Court on December 31, 2002. (*Id.* at 1).

to file the same was of his choosing. He could easily have avoided the statute of limitations simply by filing his application earlier. Despite his protestations to the contrary, nothing precluded him from doing so.

## CONCLUSION

Premised on the foregoing, the petitioner's belated motion to amend his complaint will be granted. The court has considered the entire file in this action together with the report and recommendation and the petitioner's objection and has reached an independent conclusion that the report and recommendation is due to be adopted and approved and supplemented by the foregoing analysis. Accordingly, the court hereby adopts and approves the findings and recommendation of the magistrate judge as the findings and conclusion of the court.

To the extent that the petitioner argues that his petition is timely and that he is actually innocent, the court finds such arguments to be insufficient under the circumstances. The court further finds that the magistrate judge correctly concluded that the petition is barred by the statute of limitations.

In accordance with the report and recommendation, this petition for writ of habeas corpus is due to be denied and dismissed. An appropriate order will be entered.

**DONE**, this 11th day of June, 2003.

KARON O. BOWDRE
United States District Judge